**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | **Case No. 2:14-cr-258** |
| v. | **Judge Peter C. Economus** |
| **JOSE A. PACHECO,** | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

This matter is before the Court for consideration of Defendant Jose Pacheco's ("Mr. Pacheco") Motion to Suppress pursuant to Rule 12 of the Federal Rules of Criminal Procedure. (ECF No. 23.) On August 12, 2015, this Court held a hearing regarding Mr. Pacheco's Motion. For the reasons that follow, the Court **DENIES** Mr. Pacheco's Motion.

## I. Testimony

### A. Detective William Best

The following background comes from the testimony given by Columbus Police Detective William Best ("Detective Best") in open court on August 12, 2015. Detective Best testified that he received a call from Columbus Police Sargent Jeff Lipp on December 10, 2010, about a confidential source that had information regarding medium to large quantity narcotics trafficking. Detective Best stated that he met with the confidential source, and the source told him that two Hispanic males, driving a silver Lincoln Aviator, were delivering narcotics from Chatham Village Apartments, located on Kimberly Parkway. He testified that he had never met the confidential source before, that he had no opportunity to verify anything relative to the confidential source, and that he had no idea as to the reliability of the information.

Detective Best explained that, after receiving this information, he parked his unmarked vehicle across the street from Chatham Village Apartments. He testified that on the evening of

December 10, 2010, he observed a silver Lincoln Aviator exit Chatham Village Apartments. Detective Best stated that followed the Aviator, and he pulled up next the Aviator at a red light. He testified that he saw two Hispanic males in the vehicle. Detective Best also reported that the Aviator failed to signal when turning at a light.

Detective Best explained that, while following the vehicle, he called Columbus Police Officers Jeremey Phalen and Kenneth Trivette, and told them about the narcotics trafficking tip, and the Aviators failure to signal. Detective Best stated that Officers Phalen and Trivette, riding together in a marked police cruiser, began to pursue the Aviator. He stated that the marked cruiser initiated a traffic stop of the Aviator.

Detective Best also testified that, at the time of the investigation, he had worked in the Kimberly Parkway and South Hamilton Road area for ten years. He reported that the area is not the safest part of town. Detective Best elaborated that he worked on undercover drug buys and gun runs in that area, and that the area had a lot of gang activity. He explained that his description of the crime in the area was based on his experience, and not derived from any statistical analysis or quantitative data.

Detective Best testified that, based on his experience, drug activity often involves guns, and that officers "fully believe that drug dealers are going to be armed, and we approach it as such, just for officer safety concern[s]."

    **B.**    **<u>Columbus Police Officer Jeremy Phalen</u>**

The following background comes from the testimony given by Columbus Police Officer Jeremy Phalen ("Officer Phalen") in open court on August 12, 2015. Officer Phalen testified that he was on duty and driving a marked police vehicle on December 10, 2010. Officer Phalen said that he received a call from Detective Best the evening of December 10, 2010, about information from a confidential source that two male Hispanics in a silver Lincoln Aviator were involved in

2

narcotics trafficking. Officer Phalen also noted that Detective Best said he was following the vehicle. Officer Phalen received this information around 9:00 p.m., when it was dark out.

Officer Phalen testified that he rode in his marked car with Officer Kenneth Trivette. Officer Phalen stated that he began to follow the Lincoln Aviator, and that he saw the Aviator cross the double yellow line. He testified that he initiated a traffic stop. Officer Phalen noted that the passenger in the Aviator was Mr. Pachecho, and he identified Mr. Pacheco in open court.

At the time of this investigation, Officer Phalen had nine years of experience working in the Kimberly Parkway and South Hamilton Road area. He testified that the area "is kind of a hotbed for gang activity, especially the East Haven Bloods." Officer Phalen clarified that he had no information that Mr. Pacheco or the Lincoln Aviator were involved in gang activity. He stated that, in that area, he had recovered numerous firearms, made many narcotics arrests, and responded to several homicides and violent crimes. Officer Phalen also testified that, based on his experience, there is a very strong association between narcotics and weapons.

### C. Officer Kenneth Trivette

The following background comes from the testimony given by Columbus Police Officer Kenneth Trivette ("Officer Trivette") in open court on August 12, 2015. Officer Trivette testified that he rode in the passenger seat of a marked police cruiser with Officer Phalen the night of December 10, 2010.

At the time of this investigation, Officer Trivette had three months of experience working in the Kimberly Parkway and South Hamilton Road area. Officer Trivette testified that Detective Best relayed information to him and Officer Phalen about a silver Lincoln Aviator involved in narcotics trafficking. He stated that, he and Officer Phalen initiated a traffic stop of the Lincoln Aviator after is swerved left to center.

Officer Trivette testified that he walked to the passenger side of the Lincoln Aviator, and he made contact with Mr. Pacheco. He indicated that Mr. Pacheco was not wearing a seat belt. Officer Trivette stated that he asked Mr. Pacheco for his identification, and that Mr. Pacheco could not produce identification. Officer Trivette testified that Mr. Pacheco looked around the vehicle and down at the floorboard, avoided eye contact, and appeared very nervous. Officer Trivette also indicated the Mr. Pacheco opened the glove box, rifled through papers, but did not pull any papers out. He stated that Mr. Pacheco acted like he wasn't there, and looked back and forth, but never made eye contact. Officer Trivette testified that based on the information about drug activity, and that Mr. Pacheco was looking around the car, he expected that Mr. Pacheco had a gun.

Officer Trivette testified that he has seized guns and drugs from individuals. He reported that based on his experience, whenever drugs are present, firearms are also involved. Officer Trivette indicated that he became concerned for his safety when Mr. Pacheco looked at the floorboard because he had recovered guns under car seats before. Officer Trivette stated that because of Mr. Pacheco's behavior, he placed his hand on his gun while approaching the vehicle.

Officer Trivette testified that he asked Mr. Pacheco to exit the vehicle two times, and Mr. Pacheco acted as if he did not understand the request. Officer Trivitte indicated that he then opened the door and directed Mr. Pacheco out of the vehicle. He testified that he initiated a pat down once Mr. Pacheco exited the vehicle. He stated that he performed the pat down because he thought Mr. Pacheco might have a weapon. Officer Trivette testified that he felt a "large chunk of money" in Mr. Pacheco's right cargo pocket. He indicated that when he began to patdown Mr. Pacheco's left side, he saw a paper "like a brick" protruding from the lower left cargo pocket. Officer Trivette indicated that the brick was hard, and that Mr. Pacheco said it was tortillas. He

testified that the object caused safety concerns because it could be a blunt object used to hit him. Officer Trivette noted that within seconds of feeling the object, he realized it was a brick of cocaine. Officer Trivette said he removed the package from Mr. Pacheco's pocket, and the cash from Mr. Pacheco's right side pocket. The brick was later determined to weigh approximately one half kilogram.

## II.     Motion to Suppress

Under Rule 12, of the Federal Rules of Criminal Procedure, a Defendant can file a motion to suppress evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution. *United States v. Walden*, 625 F.3d 961, 964 (6th Cir. 2010). The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Thus, the "touchstone" of the Fourth Amendment is reasonableness. *United States v. Knights,* 534 U.S. 112, 118 (2001). "[T]he reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* at 118–19 (citing *Wyoming v. Houghton*, 526 U.S. 295 (1999)).

## III.    Analysis

In his Motion to Suppress, Mr. Pacheco argues that the stop, frisk, and seizure violated the Fourth Amendment for the following reasons: (A) the *Terry* stop and first was illegal; and (B) the officers did not secure a search warrant. (ECF No. 23.) Mr. Pacheco therefore asks this court to suppress all items seized from him including but not limited to the following: (1) any and all narcotics, evidence of narcotics, and drug paraphernalia; and (2) any and all cash found within his pockets. The Court will address each of Mr. Pacheco's arguments in turn.

### A. **Terry Stop and Frisk**

Mr. Pacheco challenges the constitutionality of the traffic stop, and of Officer Trivette's pat down that resulted in the officer finding drugs and money. (ECF No. 23 at 4.) The commonly used name for this type of stop and frisk—a *Terry* stop and frisk—comes from the United States Supreme Court case *Terry v. Ohio*, 392 U.S. 1 (1986). A *Terry* stop and frisk is a type of encounter between police officers and citizens that is characterized as a "temporary involuntary detention . . . which must be predicated upon reasonable suspicion" on the part of the officers, that criminal activity is afoot. *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994).

#### *1. Reasonable Suspicion*

First, Mr. Pacheco challenges the traffic stop as improper because suspected narcotic activity was a pretext and the real reason for the stop. (ECF No. 39 at 2.) Mr. Pacheco contends that the officers improperly stopped the vehicle and ordered him to exit the vehicle. This Court disagrees.

A traffic stop is a Fourth Amendment seizure of the driver, even though the purpose of the stop is limited and the resulting detention is brief. *Brendlin v. California*, 551 U.S. 249, 255 (2007). "It is well established that a police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012); *see also*, *Whren v. United States*, 517 U.S. 806, 810 (1996). "[A]n officer may order a passenger out of the car as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk." *Brendlin*, 551 U.S. at 258; *Maryland v. Wilson*, 519 U. S. 408, 415 (1997) ("[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop.").

In the instant action, the hearing testimony establishes that two traffic violations occurred—failure to signal, and a left to center maneuver that caused the vehicle to cross the

6

double yellow line. Officers Phalen and Trivette each reported seeing the Aviator swerve and cross the yellow line. Nothing in the record draws into question the reliability of the Officers' testimony, and Mr. Pacheco does not challenge the truthfulness of the reported violation. Instead, Mr. Pacheco attacks the traffic stop as unconstitutionally pretextual, based on the fact that Officers Phalen and Trivette had motivations unrelated to the traffic violation when they stopped the Aviator. It is true that Officers Phalen and Trivette followed the Aviator with the intent to stop it and investigate suspected drug activity, but this alternative motive does not render the stop unconstitutional because a traffic violation actually occurred. If an "officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (noting that "it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop."); *see also*, *United States v. Robinson,* 414 U.S. 218 (1973) (holding that a traffic-violation arrest would not be rendered invalid by the fact that it was "a mere pretext for a narcotics search"). Therefore, the Officers properly stopped the Aviator and ordered Mr. Pacheco out of the vehicle. *See Jackson*, 682 F.3d at 453 ("A driver's failure to use a turn signal provides probable cause to justify a traffic stop irrespective of the officer's subjective intent."); *United States v. Page*, 154 F. Supp. 2d 1320, 1326 (M.D. Tenn. 2001) ("In this instance Officer Murphy's superficial reason, although not his genuine motive, for the traffic stop was the defendant's crossing the double yellow center line of the highway several times in a short distance. The Court concludes that this was sufficient cause for the stop.").

The Court now turns to the *Terry* pat down. "The question presented here is whether, given the facts and circumstances that arose once [Mr. Pacheco] was lawfully seized for a traffic violation, the officers had reasonable suspicion that criminal activity was afoot, thus justifying

7

the frisk of [Mr. Pacheco]." *United States v. Graham*, 483 F.3d 431, 438 (6th Cir. 2007). Mr. Pacheco argues that, "the arresting officers never had before them any reasonable articulable facts or circumstances sufficient to warrant" the patdown. (ECF No. 23 at 5.) Mr. Pacheco elaborates on this position and asserts that nervousness is not a valid criterion to justify a patdown. (ECF No. 39 at 5.) Mr. Pacheco also contends that the "tip provided by the confidential informant was too vague and generic to support a reasonable articulable suspicion." (ECF No. 39 at 3.) These arguments are not well taken.

"To justify a patdown of the driver or a passenger during a traffic stop . . . the police must harbor reasonable suspicion that the person subject to the frisk is armed and dangerous." *Arizona v. Johnson,* 555 U.S. 323 (2009). "Reasonable suspicion is based on the totality of the circumstances." *Joshua v. DeWitt*, 341 F.3d 430, 443 (6th Cir. 2003). "Pertinent circumstances include the officer's own direct observations, dispatch information, [and] directions from other officers . . . ." *Campbell*, 549 F.3d at 371. "The Supreme Court has held that 'nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.'" *United States v. Johnson*, 620 F.3d 685, 694 (6th Cir. 2010) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (1999)). Moreover, furtive gestures are an important consideration. *DeWitt*, 341 F.3d at 444. "[T]he crimes that frequently occur in the area" may be another relevant factor in the reasonable suspicion calculus. *United States v. Caruthers*, 458 F.3d 458, 467 (6th Cir. 2006). "The same is true with regard to the time of day: It is relevant without being independently dispositive." *Hoover v. Walsh*, 682 F.3d 481, 494–95 (6th Cir. 2012) (citing *United States v. See*, 574 F.3d 309, 314 (6th Cir. 2009)).

In the case *sub juice*, Officer Trivette made several detailed observations that led him to pat down Mr. Pacheco: (1) Detective Best relayed information about a tip that two Hispanic

8

males driving a Lincoln Aviator were involved in cocaine distribution; (2) Mr. Pacheco appeared nervous in the car; (3) Mr. Pacheco looked back and forth to avoid eye contact with Officer Trivette; (4) Mr. Pacheco avoided conversation with Officer Trivette; (5) Mr. Pacheco disregarded Officer Trivette's commands to exit his vehicle; (6) Mr. Pacheco shuffled through the glove box, making furtive gestures; (7) Mr. Pacheco looked down to the floorboard under his seat; (8) Officer Trivette could not identify Mr. Pacheco; (9) the stop occurred at night when it was dark; and (10) the stop occurred in a high crime area. *See Graham*, 483 F.3d at 439 (reasonable suspicion existed based on anonymous tip and defendant's furtive movements); *Caruthers*, 458 F.3d at 466 (noting that an individual's "[f]urtive movements" and evasive behavior are relevant to determining whether an officer's suspicion was reasonable); *United States v. Richardson*, 310 F. App'x 1, 5-6 (6th Cir. 2008) (relying, in part, on anonymous tips to the police to justify an officers *Terry* pat down); *United States v. Ross*, 91 F. App'x 482, 484 (6th Cir. 2004) (relying, in part, on a lack of identification and failure to make eye contact as reason to justify *Terry* pat down); *United States v. Stennis*, 457 F. App'x 494, 500 (6th Cir. 2012) ("an officer may draw upon his experience" to form a reasonable suspicion).

     Officer Trivette testified that, based on the drug trafficking tip and his observations of Mr. Pacheco, he suspected Mr. Pacheco was conducting illegal drug activity. Officer Trivette further testified that in his experience drug dealers are often armed. He indicated that, when he approached the Aviator, Mr. Pacheco looked at the floorboard of the vehicle and rifled through the glove box—two areas where, in his experience, guns were often hidden. From these observations, Officer Trivette concluded that Mr. Pacheco might be armed. Officer Trivette explained that he then placed his hand on his weapon, fearing that Mr. Pacheco might pull out a gun. Therefore, because Officer Trivette reasonably believed Mr. Pacheco might be armed, his

9

decision to frisk Mr. Pacheco did not violate the Fourth Amendment. *United States v. Jacob*, 377 F.3d 573, 579 (6th Cir. 2004) (an officer who stops a person he reasonably believes to be carrying or dealing in drugs is "entitled to rely on his experience and training in concluding that weapons are frequently used in drug transactions, and to take reasonable measures to protect themselves.").

### 2. *Intrusiveness of Frisk*

Having concluded that the basis for the *Terry* frisk was proper, the Court next examines "whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993). Mr. Pacheco challenges the frisk as overly intrusive. Mr. Pacheco contends that because the pat down did not raise any suspicion of weapons, Officer Trivette could not legally continue and frisk Mr. Pacheco's pockets, and seize the items within. (ECF No. 23 at 4.) Mr. Pacheco further asserts that the seizure of his property was illegal because neither the cash nor narcotics were in plain view. (ECF No. 39 at 2.) This Court sees it differently.

The degree of intrusion during the pat down must be "reasonably related in scope to the situation at hand." *Garza*, 10 F.3d at 1245. During the course of a protective pat down, if the officer detects nonthreatening contraband on the individual's person, the evidence is subject to immediate seizure. *United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005). "Moreover, under the plain feel doctrine, an officer may seize an 'object whose contour or mass' makes its identity as contraband 'immediately apparent.'" *United States v. Garcia*, 496 F.3d 495, 505 (6th Cir. 2007) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375–76 (1993)).

The Sixth Circuit has consistently allowed officers to seize drugs during frisks under factual circumstances similar to the facts in this matter. For instance, in *United States v. Richardson*, 310 F. App'x 1 (6th Cir. 2008), the court denied a motion to suppress where an officer found only drugs in a defendant's pocket. The *Richardson* court provided the following discussion regarding the frisk:

> When Detective Cardelli approached the defendant, he noticed that Richardson's front pockets had large bulges in them. Detective Cardelli testified that the object in the defendant's right front pocket "felt hard, and I do [sic] not know what it was;" and, based on his experience in law enforcement, the object "could have been" a weapon. He asked the defendant twice what was in the pocket and Richardson didn't answer. The officers had also been told by the CI that he felt like the defendant would be armed. Every other detail provided by the CI occurred just as the CI had predicted. Detective Cardelli, therefore, had justification for patting down the defendant to ensure the safety of the officers. *See United States v. Foster*, 376 F.3d 577, 586 n. 7 (6th Cir. 2004) ("[A]n officer is permitted to conduct 'a reasonable search for weapons for [his or her] protection ..., where he [or she] has reason to believe that he [or she] is dealing with an armed and dangerous individual.'").
>
> Since Detective Cardelli discovered the drugs before he concluded that the defendant was not armed, it did not violate the Fourth Amendment for him to seize the drugs discovered during the pat-down. *See Minnesota v. Dickerson,* 508 U.S. 366, 375.

*Id.*

A similar frisk also occurred in *United States v. Borne*, 239 F. App'x 185, 187 (6th Cir. 2007). In *Borne*, the Sixth Circuit found the following:

> In conducting the pat-down, [Officer] Garner felt what he thought was narcotics in distinctive packaging in the pocket of Borne's jeans. Reaching in, he retrieved what turned out to be a small amount of methamphetamine wrapped in a bag with a knot. Although Garner claims that the contents of the package could not have been identified as contraband merely by feel, the magistrate judge credited the testimony of the trooper and held that the seizure was justified under what has been commonly referred to as the "plain feel" doctrine and recognized as an exception to the Fourth Amendment's warrant requirement.

11

*Id.*; *see also, United States v. Moore*, 8 F. App'x 354, 356 (6th Cir. 2001) (*Terry* pat down justified "the officer physically putting his hand in defendant's pocket and removing the contraband.")

This case is analogous to *Richardson* and *Borne*. During the frisk, it became "immediately apparent," within seconds, to Officer Trivette that Mr. Pacecho had contraband items on his person. Officer Trivette detected what he believed to be a large sum of money in Mr. Pacheco's pocket. He also observed an object protruding from the lower left cargo pocket that he believed to be bulk cocaine. The Court therefore finds that Officer Trivette's frisk was not overly intrusive. Since, like in *Richardson*, Officer Trivette discovered the drugs before he concluded that Mr. Pacheco was not armed, it did not violate the Fourth Amendment for him to seize the drugs discovered during the patdown. *See also, Minnesota v. Dickerson*, 508 U.S. at 375 (holding that the "plain view" doctrine "has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search"); *United States v. Walker*, 181 F.3d 774, 778 (6th Cir. 1999) (holding that "police officers may seize nonthreatening contraband detected during a protective pat down search . . . so long as the officers' search stays within the bounds marked by *Terry* ").

### B. <u>Search Warrant</u>

Lastly, Mr. Pacheco argues that the seizure violated the Fourth Amendment because the officers did not have a search warrant. "[T]he Constitution forbids . . . not all searches and seizures, but unreasonable searches and seizures." *Terry*, 392 U.S. at 9. As discussed *supra*, an officer may frisk and individual under *Terry* without a search warrant. *See United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008). Additionally, "[a]n officer may seize contraband discovered during a lawful frisk or pat down, even without a warrant." *United States v. Thomas*,

142 F. App'x 896, 899 (6th Cir. 2005). Here, Officer Trivette's stop and search fell within the confines of *Terry* and therefore it did not violate the Fourth Amendment.

**IV.  Conclusion**

For the reasons discussed above, the Court hereby **DENIES** Mr. Pacheco's Motion to Suppress. (ECF No. 23.)

**IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE